## CONFIDENTIAL RELEASE AND SETTLEMENT AGREEMENT

This Confidential Release and Settlement Agreement is between Innovative USA, Inc. and Sterling Publishing Co, Inc. Innovative USA, Inc. and Sterling Publishing Co., Inc. are collectively referred to as the Parties.

### Recitals

WHEREAS, Innovative is the owner of the entire right, title, and interest in and to United States Patent No. 5,820,383 (the "Patent In Suit");

WHEREAS Sterling Publishing Co., Inc. had been selling a book entitled "Magnetic Sudoku," ISBN -13:978-1-4027-3848-7, ISBN-10: 1-4027-3848-X ("the Book");

WHEREAS, Innovative USA, Inc. commenced an action on or about July 12, 2007 in the United States District Court for the Southern District of New York, captioned *Innovative USA, Inc. v. Sterling Publishing Co., Inc.*, Civil Action No. 07 CV 6362 (the "Lawsuit");

WHEREAS, in the Lawsuit Innovative USA, Inc. claims that Sterling Publishing Co., Inc. infringed the Patent In Suit by sale of the Book causing damage to Innovative;

WHEREAS, on or about September 10, 2007, Sterling Publishing Co., Inc. filed an Answer in the Lawsuit in which Sterling Publishing Co., Inc. denied infringing the Patent In Suit and alleged that the Patent In Suit is invalid; and

WHEREAS, Sterling Publishing Co., Inc. and Innovative USA, Inc. have engaged in negotiations relative to reaching a settlement, compromise and resolution of the Parties' various claims and allegations, and desire finally to compromise, settle and discharge all actual and potential claims, controversies, and demands arising out of or relating to the Lawsuit and the Patent In Suit;

NOW THEREFORE, in consideration of the following rights and obligations granted and undertaken by the Parties in this Agreement and the Patent License Agreement (defined herein), and for other good and valuable consideration, the adequacy and sufficiency of which hereby is acknowledged, the Parties agree as follows:

1. **DEFINITIONS**

    1.1  "Agreement" means this Confidential Release and Settlement Agreement.

    1.2  "Innovative" means Innovative USA, Inc., its current and former parents, subsidiaries, predecessors, affiliations, divisions, related entities and each of their present and future parents, subsidiaries, predecessors, successors, owners, shareholders, officers, directors, partners, affiliates, divisions, assigns, officers, employees, attorneys, agents, representatives, insurers, attorneys, and the successors, heirs, administrators, receivers and assigns of each of the foregoing;

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/27/08

1.3 "Sterling" means Sterling Publishing Co., Inc. and its current and former parents, subsidiaries, predecessors, successors, affiliates, divisions and related entities and each of their present and future parents, subsidiaries, predecessors, successors, owners, shareholders, officers, directors, partners, affiliates, divisions, assigns, officers, employees, attorneys, agents, representatives, insurers, attorneys, and the successors, heirs, administrators, receivers and assigns of each of the foregoing.

1.4 "Patent Rights" shall mean the right to make, have made, use, lease, sell, offer to sell, and export/import inventions claimed in the Patent In Suit, including all worldwide counterparts and all divisions, reissues, reexaminations, continuations, continuations in part, extensions and any other type of application based on and/or claiming priority to the Patent In Suit, or to its predecessor applications and any other pending applications or patents which relate to the subject matter of the complaint in the Lawsuit or the Patent In Suit.

2. **DISMISSAL AND RELEASES**

2.1 Dismissal of Lawsuit. Contemporaneous with the execution of this Agreement, counsel for the Parties to the Agreement shall execute a Stipulation of Dismissal with Prejudice in the form attached as Exhibit A for the Lawsuit. Sterling may file the Stipulation of Dismissal with the court with notice to Innovative.

2.2 Release by Innovative. Innovative, in consideration of the agreements set forth herein, and intending to be legally bound, hereby irrevocably and unconditionally generally releases Sterling, from or in connection with, and hereby waives and/or settles, with prejudice, any and all past and future actions, causes of action, suits, rights, debts, sums of money, accounts, accountings, covenants, contracts, charges, controversies, agreements, promises, indemnities, liabilities, damages, judgments, obligations, expenses, costs, executions, claims, or demands of every nature whatsoever, in law or equity or arbitration, whether based on contract, tort, statutory or other legal or equitable theory of recovery, whether known or unknown, asserted or unasserted, which Innovative ever had, now has or hereafter can, shall or may have as of the date of this Agreement arising or related, directly or indirectly, or connected to (i) all claims in the Lawsuit; (ii) claims that could have been asserted by Innovative against Sterling in the Lawsuit related to the Patent Rights; or (iii) the Patent Rights.

2.3 Release by Sterling. Sterling, in consideration of the agreements set forth herein, and intending to be legally bound, hereby irrevocably and unconditionally generally releases Innovative, from or in connection with, and hereby waives and/or settles, with prejudice, any and all past and future actions, causes of action, suits, rights, debts, sums of money, accounts, accountings, covenants, contracts, charges, controversies, agreements, promises, indemnities, liabilities, damages, judgments, obligations, expenses, costs, executions, claims, or demands of every nature whatsoever, in law or equity or arbitration, whether based on contract, tort, statutory or other legal or equitable theory of recovery, whether known or

unknown, asserted or unasserted, which Sterling ever had, now has or hereafter can, shall or may have as of the date of this Agreement arising or related, directly or indirectly, or connected to (i) all claims in the Lawsuit; or (ii) claims that could have been asserted by Sterling against Innovative in the Lawsuit related to the Patent Rights.

3. **COVENANT NOT TO ASSERT**

   3.1 Innovative hereby covenants and agrees that it will not, at any time hereafter, either directly or indirectly, threaten, initiate, assign, maintain or prosecute, or in any way aid or assist in the threatening, initiation, maintenance or prosecution of, (i) any claim, demand, suit or cause of action at law or otherwise against Sterling based upon any right that such person or entity may have as of the Effective Date of this Agreement under or in connection with any claim of the Patent In Suit or the Patent Rights, including seeking injunctive relief, arising from, related to, or in any way connected to the Patent In Suit or the Patent Rights or (ii) any claim, demand, suit or cause of action at law or otherwise against Sterling based upon any right that such person or entity may have now or in future under or in connection with any claim of the Patent In Suit or the Patent Rights in connection with the Book, including seeking injunctive relief, arising from, related to, or in any way connected to the Patent In Suit or the Patent Rights in connection with the Book.

   3.2 If Sterling creates a new parent, subsidiary, or affiliate in connection with a corporate reorganization, expansion, bankruptcy reorganization or otherwise, such new parent, subsidiary, or affiliate, as the case may be, shall be deemed to be within the defined term "Sterling" and shall be covered under this Covenant not to Assert. If Sterling enters into a joint venture with another entity ("Joint Venture Entity"), such joint venture shall be deemed to be within the defined term "Company" and shall be covered under this Covenant not to Assert. However, this Agreement shall not relieve such business or entity from past or future liability based on the Patent In Suit, if any, for its own products, services, methods, systems or techniques.

   3.3 If Sterling sells, divests, or otherwise loses control of an affiliate, subsidiary, business, or portion of a business to an acquiring entity or in connection with a spinoff, or public offering or similar transaction, such affiliate, subsidiary, business, or portion of business shall continue to be covered under this Covenant not to Assert. However, this Agreement shall not relieve such business or entity from past or future liability based on the Patent In Suit, if any, for its own products, services, methods, systems or techniques.

   3.4 Any business or entity acquired by or which merges into Sterling after the date of this Agreement, shall be deemed to be within the defined term "Sterling" and shall be covered under this Covenant not to Assert. However, this Agreement shall not relieve such business or entity from past or future liability based on the Patent In Suit, if any, for its own products, services, methods, systems or techniques.

3.5 In the event of an acquisition of Sterling, in whole or in part, by virtue of an asset, stock purchase, merger, or any other corporate or other transaction, this Covenant not to Assert shall extend to the acquiring entity to the extent the acquiring entity continues to make, use, sell, or offer to sell the Book, as Sterling did in its operations preceding the acquisition. However, this Agreement shall not relieve such acquiring entity from past or future liability based on the Patent In Suit, if any, for its own products, services, methods, systems or techniques.

4. **LICENSE**

4.1 License. Simultaneous with the execution of this Agreement and in consideration of the agreements herein, Sterling shall enter into a non-exclusive, non-terminable, worldwide royalty free license of the Patent In Suit and the Patent Rights in connection with the Book from Innovative (the "Patent License Agreement"), in the form annexed hereto as Exhibit B.

5. **COMPROMISE**

5.1 Innovative and Sterling agree and acknowledge that this Agreement is the result of a compromise and shall never be construed as any admission by either of them of any liability, wrongdoing, or responsibility on its part or on the part of any of them.

5.2 Innovative and Sterling agree and acknowledge that neither this Agreement, nor the Patent License Agreement, nor any of their respective terms shall ever be used as an admission, suggestion, or implication that the Patent In Suit is valid or enforceable or that Sterling has infringed or is infringing the Patent In Suit or any of the Patent Rights.

6. **CONFIDENTIALITY**

6.1 Except for the fact of settlement between the Parties and that the settlement includes the grant of a nonexclusive right to Licensee for the past and future use and practice of the Patent Rights by Licensee in connection with the Book (as defined in the Patent License Agreement) on a royalty free basis, Innovative and Sterling agree not to disclose the contents or terms of this Agreement or the Patent License Agreement or any matters pertaining to those Agreements or settlement of the Lawsuit, excluding the Stipulation of Dismissal attached as Exhibit A hereto, unless such disclosure is (i) lawfully required by a governmental agency; (ii) otherwise required to be disclosed by law (including without limitation federal, state and worldwide security laws, rules, and regulations); (iii) necessary in any legal proceeding in order to enforce any provision of this Agreement; and (iv) to accountants, advisors, insurers and attorneys who agree to keep this information confidential. In the event disclosure is required by law, the disclosing party shall give seven business days notice to the non-disclosing party before any such disclosure so that the non-disclosing party may object and/or seek a Protective Order affecting such disclosure.

7. **REPRESENTATIONS AND WARRANTIES**

   7.1   Innovative USA, Inc. represents and warrants that it is the sole owner of all right, title, and interest in the Patent In Suit, and that it does not own or control any patent rights (other than the Patent In Suit) that, as of the date of this Agreement, are not licensed under the Patent License Agreement or that it could in any way claim are infringed upon by the Sterling in connection with the Book.

   7.2   Each Party represents and warrants that (i) it has not assigned or transferred to any other person or entity any of its claims, demands, or causes of action settled and released herein; (ii) it has full power and authority to enter into this Agreement and to perform its obligations hereunder, including the grant of any covenants and releases herein; (iii) this Agreement is binding on and enforceable against the parties in accordance with its terms; (iv) it has relied solely on its own judgment, belief, and knowledge, and on the advice and recommendation of its own counsel, concerning the advisability of entering into this Agreement; and (v) the compliance by each party with its obligations hereunder will not conflict with or result in a breach of any agreement to which it is a party or is otherwise bound.

   7.3   The covenants, representations and warranties made by the Parties in this Agreement shall survive the execution of the Agreement. In the event that either Party is found to have made a material misstatement in any term, condition, covenant, or condition in this Agreement, that Party shall be liable for any damages suffered or incurred by the other Party by reason of such misstatement or breach.

8. **NOTICES**

   8.1   All notices hereunder shall be in writing and shall be given by hand delivery, national overnight courier service, or U.S. mail, certified or registered, postage prepaid, return receipt requested, to the party to whom it is given at the address set forth below, or at such other address as such party may direct by notice given hereunder. All notices shall be deemed effective upon hand delivery, or one (1) business day following deposit with any overnight courier service for next day delivery in accordance with this paragraph, or five (5) business days following deposit in the U.S. mail in accordance with this paragraph.

   To Innovative:

   > Locke Lord Bissell & Liddell LLP
   > 885 Third Avenue
   > 26th Floor
   > New York, NY 10022
   > Attn: Alan Clement, Esq.

   To Sterling

5

>Sterling Publishing Co., Inc.
>387 Park Avenue South
>New York, New York 10016
>Attn: Chief Executive Officer

With a required copy to:

>Barnes & Noble, Inc.
>122 Fifth Avenue, 7th Floor
>New York, NY 10011
>Attn: Legal Department

9. **DISPUTE RESOLUTION**

   9.1 Each Party shall bear its own costs and attorneys' fees incurred in connection with the preparation of this Agreement and in connection with the Lawsuit.

   9.2 Any legal action or legal proceeding to enforce, or arising out of or relating to this Agreement or the Patent License Agreement shall be brought in the United States District Court for the Southern District of New York, and each party agrees to remain subject to the personal jurisdiction of that court for such purposes. If for some reason that federal court lacks jurisdiction, then any such suit or legal proceeding shall be brought in the state courts located in New York County and the parties agree to be subject to the personal jurisdiction of that state court for any such action or proceeding.

10. **WAIVER, INTEGRATION, ALTERATION**

    10.1 Any waiver by either party hereto of any breach of any kind or character whatsoever by the other party, whether such be direct or implied, shall not be construed as a continuing waiver of or consent to any subsequent breach of this Agreement on the part of the other party.

10.2 This Agreement, including all Exhibits, constitutes the entire understanding and only agreement between the Parties with respect to the subject matter hereof and supersedes any prior or contemporaneous negotiations, representations, agreements, and understandings, written or oral, that the parties may have reached or made with respect to the subject matter hereof. No agreements altering or supplementing the terms hereof may be made except by means of a written document signed by the duly authorized representatives of each of the Parties hereto.

10.3 If this Agreement and the Patent License conflict regarding a term, this Agreement shall control.

10.4 If any provision or any part of any provision of this Agreement is for any reason held to be invalid, unenforceable or contrary to any public policy, law, statute and/or ordinance, then the remainder of this Agreement shall not be affected thereby and shall remain valid and fully enforceable. Notwithstanding the foregoing, if such provision could be more narrowly drawn so as not to be invalid, prohibited or unenforceable in such jurisdiction, it shall be so narrowly drawn, without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

11. **GENERAL**

11.1 This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts entered into and performed wholly within New York without regard to its choice of law rules.

11.2 Each party shall execute any instruments reasonably necessary to implement the provisions of this Agreement.

11.3 The Parties and their counsel cooperated in drafting this Agreement, and any rule of construction providing that ambiguity is resolved against the drafting party shall not be employed in the interpretation of this Agreement.

11.4 This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which together shall be deemed one and the same instrument.

11.5 Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms.

11.6 The rights and obligations of the parties hereto shall inure to the benefit of, and be binding and enforceable upon, the respective successors and permitted assigns of the parties.

11.7 This Agreement shall be effective as of the date of its complete execution by the last signing Party or attorney for a Party.

*So ordered.*

*[signature]*
*Feby 27, 2008*

7

IN WITNESS WHEREOF, the Parties have caused their duly authorized representatives to execute this Confidential Release and Settlement Agreement as of the last date set forth below.

**INNOVATIVE USA, INC.**

By: _____

Name: Michael Levins

Title: CEO

Date: 12/20/07

**STERLING PUBLISHING CO., INC.**

By: _____

Name: Marcus Leaver

Title: President

Date: 1/15/08

## EXHIBIT B

## CONFIDENTIAL NONEXCLUSIVE PATENT LICENSE AGREEMENT

This Confidential Nonexclusive Patent License Agreement (the "Patent License Agreement") is entered into as of the Effective Date by Innovative USA, Inc. ("Innovative"), a Connecticut corporation, having its principal place of business in Norwalk, Connecticut and Sterling Publishing Co., Inc., a Delaware corporation with its principal place of business in New York, New York ("Sterling").

### I.  DEFINITIONS

As used herein, the following terms shall have the meanings set forth below:

1.00  "Licensee" shall mean Sterling, and its parents, subsidiaries, predecessors, successors, affiliates, divisions and related entities;

1.01  "Licensor" shall mean Innovative USA, Inc.

1.02  "Lawsuit" shall mean the action commenced by Innovative on or about July 12, 2007 in the United States District Court for the Southern District of New York, captioned *Innovative USA, Inc. v. Sterling Publishing Co., Inc.*, Civil Action No. 07 CV 6362.

1.03  "Confidential Release and Settlement Agreement" shall mean the Settlement Agreement entered into between Innovative and Sterling on or about December __, 2007 concerning the settlement of the Lawsuit.

1.04  "Patent" shall mean U.S. Patent No. 5,820,383.

1.05  "Patent Rights" shall mean the right to make, have made, use, lease, sell, offer to sell, and export/import inventions claimed in the Patent , including all worldwide counterparts and all divisions, reissues, reexaminations, continuations, continuations in part, extensions and any other type of application based on and/or claiming priority to the Patent, or to its predecessor

applications and any other pending applications or patents which relate to the subject matter of the complaint in the Lawsuit.

1.06   "The Book" shall mean the book entitled "Magnetic Sudoku," ISBN -13:978-1-4027-3848-7, ISBN-10: 1-4027-3848-X.

## II.   BACKGROUND OF AGREEMENT

2.00   Licensor is the sole owner of the Patent Rights.

2.01   Licensee wishes to acquire a nonexclusive license to the Patent Rights in connection with the Book under the terms set forth below.

2.02   Whereas the Parties have entered into this Agreement based on the exchange of valuable consideration which is hereby acknowledged, including the consideration for the exchange of obligations set forth in this Agreement and the Confidential Release and Settlement Agreement.

## III.   PATENT LICENSE

3.00   Licensor hereby grants to Licensee a non-exclusive, nonterminable, royalty free, worldwide license to the Patent Rights to make, use, sell or offer to sell the Book, which license will expire on the date of expiration of the last to expire patent in the Patent Rights.  Licensor agrees that it will take no action against any third party acting with Licensee in connection with Licensee's rights hereunder, including without limitation, in connection with the sale, manufacture, distribution, design or production of the Book.

## IV.   RELEASE

4.00   Without limitation to the Release set forth in the Confidential Release and Settlement Agreement, Licensor acknowledges, among other things, that (1) Licensee is relieved of all liability to Licensor arising out of or relating to the Patent Rights, including any and all

claims, known or unknown, or suspected, as of the date of this License and (2) Licensor covenants not to sue Licensee for infringement of the Patent Rights through the date of this License and for infringement of the Patent Rights in connection with the Book at any time, including through the date of this License and in the future.

## V.   AUTHORITY

5.00   Licensor represents and warrants that it is the sole owner of all right, title, and interest in the Patent, and that it does not own or control any Patent Rights that, as of the date of this Patent License Agreement, are not licensed under this Patent License Agreement for the making, using, selling or offering to sell the Book, or that it could in any way claim are infringed upon by Licensee in connection with the Book.

5.01   Licensor represents and warrants that (i) it has not assigned any right, title or interest in the Patent Rights to any other person; (ii) that the Patent Rights are enforceable; (iii) that it has full power and authority to enter into this Patent License Agreement and to perform its obligations hereunder, including without limitation to license the Patent Rights; (iv) this Agreement is binding on and enforceable against Licensor in accordance with its terms; (v) it has relied solely on its own judgment, belief, and knowledge, and on the advice and recommendation of its own counsel, concerning the advisability of entering into this Patent License Agreement; and (vi) the compliance by Licensor with its obligations hereunder will not conflict with or result in a breach of any agreement to which it is a party or is otherwise bound

## VI.   CONFIDENTIALITY

6.00 Except for the fact of settlement between the Parties and that the settlement includes the grant of a nonexclusive right to Licensee for the past and future use and practice of the Patent Rights by Licensee for the Book on a royalty free basis, Innovative and Sterling agree not to

disclose the contents or terms of this Agreement or the Confidential Release and Settlement Agreement or any matters pertaining to those Agreements or settlement of the Lawsuit, excluding the Stipulation of Dismissal attached as Exhibit A to the Confidential Release and Settlement Agreement and disclosure amongst parties contained in the definition of Licensee, unless such disclosure is (i) lawfully required by a governmental agency; (ii) otherwise required to be disclosed by law (including without limitation federal, state and worldwide security laws, rules, and regulations); (iii) necessary in any legal proceeding in order to enforce any provision of this Agreement; and (iv) to accountants, advisors, insurers and attorneys who agree to keep this information confidential. In the event disclosure is required by law, the disclosing party shall give seven business days notice to the non-disclosing party before any such disclosure so that the non-disclosing party may object and seek a further Protective Order affecting such disclosure.

## VII. ASSIGNABILITY

7.00   Licensor or Licensee may assign their respective rights under this Patent License Agreement, including the Patent Rights in whole or in part, at any time upon written notice to the other Party setting forth the identity of the assignee. Any such assignment shall not affect the licenses, rights and releases granted to Licensee hereunder. In the event of an assignment, Licensor must meet its obligations to Licensee, notwithstanding any failure of the assignees to meet such obligations.

## VIII. DISPUTE RESOLUTION

8.01   Each Party shall bear its own costs and attorneys' fees incurred in connection with the preparation of this Patent License Agreement and in connection with the Lawsuit.

8.02   Any legal action or legal proceeding to enforce, or arising out of or relating to this Patent License Agreement or the Confidential Release and Settlement Agreement shall be brought in the United States District Court for the Southern District of New York, and each party agrees to remain subject to the personal jurisdiction of that court for such purposes. If for some reason that federal court lacks jurisdiction, then any such suit or legal proceeding shall be brought in the state courts located in New York County and the parties agree to be subject to the personal jurisdiction of that state court for any such action or proceeding.

## IX.   SEVERABILITY

9.00   If any provision or any part of any provision of this Patent License Agreement is for any reason held to be invalid, unenforceable or contrary to any public policy, law, statute and/or ordinance, then the remainder of this Patent License Agreement shall not be affected thereby and shall remain valid and fully enforceable. Notwithstanding the foregoing, if such provision could be more narrowly drawn so as not to be invalid, prohibited or unenforceable in such jurisdiction, it shall be so narrowly drawn, without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

9.01 In the event the legality of any provision of this Patent License Agreement is brought into question because of a decision by a court of competent jurisdiction of any country in which this Patent License Agreement applies, Licensor, by written notice to Licensee, may revise the provision in question or may delete it entirely so as to comply with the decision of said court, provided that the underlying license and economics of this Patent License Agreement shall remain substantially unchanged and such changes shall apply only in the geographic area over which such court has jurisdiction.

## X.   WAIVER, INTEGRATION, ALTERATION

10.00   Any waiver by either party hereto of any breach of any kind or character whatsoever by the other party, whether such be direct or implied, shall not be construed as a continuing waiver of or consent to any subsequent breach of this Agreement on the part of the other party.

10.01   This Patent License Agreement and the Confidential Release and Settlement Agreement, together, constitute the entire understanding and only agreement between the Parties with respect to the subject matter hereof and supersede any prior or contemporaneous negotiations, representations, agreements, and understandings, written or oral, that the parties may have reached or made with respect to the subject matter hereof. No agreements altering or supplementing the terms hereof may be made except by means of a written document signed by the duly authorized representatives of each of the Parties hereto.

10.02   If this Patent License Agreement and the Confidential Release and Settlement Agreement conflict regarding a term, the Confidential Release and Settlement Agreement shall control.

10.03   If any provision or any part of any provision of this Patent License Agreement is for any reason held to be invalid, unenforceable or contrary to any public policy, law, statute and/or ordinance, then the remainder of this Patent License Agreement shall not be affected thereby and shall remain valid and fully enforceable. Notwithstanding the foregoing, if such provision could be more narrowly drawn so as not to be invalid, prohibited or unenforceable in such jurisdiction, it shall be so narrowly drawn, without invalidating the remaining provisions of this Patent License Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

## XI.  COMPROMISE

11.01 Innovative and Sterling agree and acknowledge that this Patent License Agreement is the result of a compromise and shall never be construed as any admission by either of them of any liability, wrongdoing, or responsibility on its part or on the part of any Party.

11.02 Innovative and Sterling agree and acknowledge that neither this Patent License Agreement, nor the Confidential Release and Settlement Agreement, nor any of their respective terms shall ever be used as an admission, suggestion, or implication that the Patent is valid or enforceable or that Sterling has infringed or is infringing the Patent or any of the Patent Rights by making, using, selling or offering to sell the Book.

## XII.  NOTICES UNDER THE AGREEMENT

12.00 All notices hereunder shall be in writing and shall be given by hand delivery, national overnight courier service, or U.S. mail, certified or registered, postage prepaid, return receipt requested, to the party to whom it is given at the address set forth below, or at such other address as such party may direct by notice given hereunder. All notices shall be deemed effective upon hand delivery, or one (1) business day following deposit with any overnight courier service for next day delivery in accordance with this paragraph, or five (5) business days following deposit in the U.S. mail in accordance with this paragraph.

    To Innovative:

        Locke Lord Bissell & Liddell LLP
        885 Third Avenue
        26th Floor
        New York, NY 10022
        Attn: Alan Clement, Esq.

> To Sterling
>
>> Sterling Publishing Co., Inc.
>> 387 Park Avenue South
>> New York, New York 10016
>> Attn: Chief Executive Officer
>
> With a required copy to:
>
>> Barnes & Noble, Inc.
>> 122 Fifth Avenue, 7th Floor
>> New York, NY 10011
>> Attn: Legal Department

## XIII  MISCELLANEOUS

13.00  This Patent License Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts entered into and performed wholly within New York without regard to its choice of law rules.

13.01  Each party shall execute any instruments reasonably necessary to implement the provisions of this Patent License Agreement.

13.02  The Parties and their counsel cooperated in drafting this Patent License Agreement, and any rule of construction providing that ambiguity is resolved against the drafting party shall not be employed in the interpretation of this Patent License Agreement.

13.03  This Patent License Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which together shall be deemed one and the same instrument.

13.04  Each party acknowledges that it has read this Patent License Agreement, understands it, and agrees to be bound by its terms.

13.05  The rights and obligations of the parties hereto shall inure to the benefit of, and be binding and enforceable upon, the respective successors and permitted assigns of the parties.

13.06 This Patent License Agreement shall be effective as of the date of its complete execution by the last Party or attorney for a Party.

(Remainder of this page intentionally left blank)

IN WITNESS WHEREOF the parties have caused this Patent License Agreement to be executed by their duly authorized officers on the respective dates and at the respective places hereinafter set forth.

| LICENSEE | LICENSOR |
|---|---|
| Sterling Publishing Co., Inc. | Innovative USA, Inc. |
| By: *[signature]* | By: *[signature]* |
| Name: MARCUS LEAVER | Name: Michael Levins |
| Title: President | Title: CEO |

(Signature page to Nonexclusive Patent License Agreement)